Good morning, Your Honors. My name is Katherine Dixon. I represent Sergio Tello-Carrillo, who is the appellant in this case. Mr. Carrillo was tried and convicted in a case in San Diego County. He had been charged with being a foot guy, smuggling an illegal alien through the pedestrian entrance at the Fort of Entry at San Ysidro. But the case was a weak one, and the government, in order to bolster their case, essentially committed three major errors. Which of the three is your best one? My best one is my first one, which is the admission of hearsay and the bootstrapping around the Courts Eliminate ruling that they could not put into evidence the fact that my client's name was on a list of foot guides that the Border Patrol had compiled through their conversations with illegal aliens who had been smuggled across the border. There was no testimony, and I'm sorry to interrupt you. Was there that was allowed that identified your client as a foot guide? It was an accumulation of testimony, what was happening. And it was quite systematic by the prosecutor, and it was objected to at every turn, and that was that the prosecutor asked every agent who testified, and it was a short trial. These agents testified over the course of a short two-day, two, three-day trial that they were Border Patrol agents, but they went beyond their mere training and experience into the fact that all of these agents were on a foot guide team together, and that part of what the foot guides did was to speak with illegal aliens and compile this list of foot guides. And that kind of testimony, the fact that there was a list that all of these agents were on the same team, were all working together, time after time, after one agent after another, arose to the level of essentially it was bootstrapping around the Court's ruling. In each case, that questioning then went about the existence of a list and about the fact that they're on Operation Misguided, and they're all on a foot guide team, segued directly into, and what were you doing on July 11, 2011, which was, of course, the date of my client's arrest. Well, what about the district court's point that a juror would be more likely to infer that your client was not on the list of agents than a failure to mention it during the agent's testimony describing the events leading up to the July arrest? I think it all was tied very neatly together by the prosecutor himself. When he asked the final agent when he was about to, when he was approaching my client as my client was leaving the grocery store, there was no testimony up to this point, direct testimony, as you pointed out, that, in fact, they knew who my client was or had any reason to know specifically who my client was. The prosecutor himself said, asked Agent Bovet, and, how did you call to Mr. Carrillo? He said, hey, Sergio, there was no testimony in trial that they had any reason to know what my client's name was. So, I mean, that was the cherry on, as I see it, that is the, that's the cherry on top, that the prosecutor elicits from this arresting agent that, in fact, he knew my client's name. Well, isn't it more likely that he knew your client had been involved in similar episodes because he had seen them do it? You know, I mean, you suspect somebody's a fool. But there was no evidence of that. And there was no evidence he was on the list, either. Well, they I mean, you knew that the agent's job was to follow foot guides. And if he had seen your client doing this before, he could recognize them. This is one of the people I see on a daily basis. But that's 404B that was not, that was also excluded in this case, is the fact that the fact that an agent would have known my client earlier would have been excluded in any event based under 404B. But there was no 404B that was allowed to be admitted in this case, either. But the issue then still becomes this whole idea that, in fact, they're putting in hearsay, they're putting in irrelevant information about the existence of the list. There was no relevance to the mere existence of this list to any of the issues at trial. Assuming that to be correct, background information is allowed, but assuming it went too far, which is really what you're saying. Yes. Where's the prejudice here? When you, by your own admission, there was no direct testimony allowed. And it appears that the trial judge tried to toe the line with the government. And, in fact, when it got close to the line, the counsel said, defense counsel said, I'm going to, you, you said, I'm going to object if this line of questioning continues. And the court said, you understand, counsel? And the opposing counsel said, understood. And the line of questioning shifted from that point. So it seems, my impression, is the trial judge tried to hold the prosecutor's feet to following the in limine order and, in fact, issued a, I thought, a nicely worded opinion following trial on that point. The whole, the, I think what really counts here is the fact that it was a repeated behavior and that there was an accumulation of this repeated behavior. And coupled with the fact that otherwise the evidence in the case was weak, that, in fact, Mr. Tao was a foot guide. That, coupled with the government's, although, as you pointed out, this is my best argument, I still think it makes a difference that we had this Agent Acevedo testifying, our inexpert expert, about the price of groceries in Mexico versus San Diego. But that was an expert testimony. What was it? It was lay testimony, right? I go grocery shopping. What? Am I allowed to comment, if called as a witness, about my views on the price of milk or eggs or bread, for that matter, and then allow you to cross-examine me and, well, how do you come to that conclusion? Which you did in this case. You had a nice cross-exam of the conclusions reached by Agent Acevedo. But it was all irrelevant. It was completely irrelevant because it was, if it was admitted for anything, it was admitted to, as a way to rebut my client's defense that he had gone to San Diego to purchase groceries. And he, and my client testified that he believed that the things he wanted to purchase in, just on the other side of the border in San Diego, were less expensive and of better quality for his pregnant wife and daughter. But that's a subjective belief. It all comes from a cow, I think, was the most important testimony. The quality of the milk depends on the cow. Well, that. But you were allowed the chance to debunk, isn't the government allowed, rather, the chance to debunk one of your theories? But it was my client's subjective belief. I don't know why the opinion of Agent Acevedo would even have been relevant to my client's subjective belief as to the quality. So it should never have been admitted at all. Credibility. Right. Credibility of a key witness. Credibility of your client. Doesn't it go to that, who to believe? But it's his subjective belief. My client's subjective belief. So that means it can't be challenged? Not that it can't be challenged, but it has to be challenged with some solid evidence that actually says this is an unreasonable belief. But there was none of that from Agent Acevedo. None of that. So if I brought a newspaper ad showing the advertised price across the border, that would be okay? The price of milk in the U.S. versus Mexico, would that be okay, if I were allowed to challenge the credibility by bringing in an ad, a newspaper ad? I think that would be closer. Well, we don't know that your client would have read the ad, so you could say, well, so what? That's not challenging his credibility. He doesn't read ads. In any event, I would like to think that I did a good enough cross-examination that his testimony did not make any difference at trial. But my concern is for, not for us, who are experienced in a courtroom and watch witnesses every day, but for these jurors who sit there and may never have seen anything like this take place in the courtroom. And then finally, there's the whole, the courts allowing the whole group of agents, all of the agents who had testified, to amass in the courtroom for closing argument. Now, I objected to that because here the agents were seated in the courtroom. They had all testified. All of the jurors had seen all of those agents testify. I objected to their being in the courtroom because I thought it was essentially an undue influence on the jurors. It showed to the jury that these agents all felt they had a stake in this case. They, of course, had all concluded that my client was guilty. It's a public courtroom. It's not unusual for people who have testified to be allowed to remain in the courtroom after they've testified or family members to come for closing argument. And probably more importantly, at least for me, how do you get around the Supreme Court decision in Holbrook v. Flynn? In that case, they had their uniforms on, and the court said that's okay. Here, they were there dressed as civilians, and the court said that's okay. Here, the whole issue was that these agents had all testified. They had all testified in the previous couple of days prior to the trial. They're all seated there. And it's all about, I mean, the issue here is whether my client had a fair trial, and I think it all affected how the jury could have viewed the evidence in the case and whether, in fact, Mr. Tao and come to some conclusion based upon these influences that simply should not have been placed on the jurors. What if it was the flip? What if instead of anyone from the government sitting in the back, all of your clients, witnesses, or family or friends had to go to the courtroom? Would that be okay? The defendant has a right to a fair trial. Yes. So if he gets a fair trial, it's not that the government has a right to a fair trial. My question is, it would be okay if all of your clients, families, friends, and or witnesses were in the courtroom. I think so. It's not what we have here, though, but I think so. I think so. You're saying the flip side doesn't necessarily equate. Right. Right. It certainly wouldn't deprive him of his right to have a fair trial. I'm sorry? I said it wouldn't deprive your client of a right to get to have a fair trial if his cousins and aunts were there. Right. I don't think that affects whether the trial itself is fair. Right. But as you said, that's not one of your stronger points. You've got about two and a half minutes. Why don't you save them because you may want to go back to your test points. I think I'll sit, but I do think this case needs to be remanded for a new trial so that hopefully my client can have a fair trial this time. Okay. You'll have another chance. Two minutes. May it please the Court, Ms. Kastetter on behalf of the United States, Your Honor, this district court judge was very careful to ensure Mr. Tao got a fair trial. She made a pretrial and eliminate ruling saying you can't put in the fact he was arrested in 2003 for smuggling aliens, you can't put in the fact that in March of this year he smuggled an alien through the Port of Entry as a foot guide, and you can't put in the fact that there was an alert placed on him as a result of those activities. None of that evidence came in. Nothing even close to any of that evidence that she excluded came in. Was it necessary really for you to get into the other stuff that she's complaining about? Well, the prosecutor said, Your Honor, just so I understand your ruling, what I would like to do is put on my agents to say they're experts in foot guide alien smuggling. They look at data, they interview material witnesses, and they look at video and identify foot smugglers and try to arrest them. She said that's fine. Go ahead and do that. That's fine. Do not, however, put in the arrest, the prior smuggling and the alert. So to call what the prosecutor did in this case misconduct, it's like almost beyond comprehension. He litigates before the district court the issue. She rules. He follows her ruling to the T. She rules during trial and after trial that he followed her ruling to the T. And now to allege that he committed misconduct I think is untenable. And the allegation that time after time they put on evidence of lists and alerts, lists was mentioned one time by the first witness. There was no objection to the word list. Counsel stood up and said if this line of questioning goes any further, I'm going to object. That line of question did not go any further. But I'm not objecting to the word list, Your Honor. To me it seems that counsel sent a clear message to the court and the prosecutor, okay, you've gone as far as the judge said you could go on this unilimited motion. Don't go any further. And he did. Were there any repeated objections to any of this testimony? There was only one objection during the entire trial, and that was during the agent of Agent Tabon. That's the one I quoted? No. I don't believe so. There was one objection where she said, Your Honor, I think Agent Tabon's testimony is going beyond the scope of your unlimited motion. That's the only time in the entire trial that that point was brought to the court's attention. And the court rejected and overruled that saying, no, he's doing what I told him he could do. He's talking about his experience and he's going into what happened on the 12th. That's what happened. There is no other mention of the word list anywhere in the trial. None of these agents talked about them responding to this event based on an alert, based on a prior suspicion of this defendant. Was alert mentioned at all? Alert was mentioned one time by Agent Cuponsato in rebuttal when she said, I got involved in this case when we got a call or an alert that an alien smuggling was going on. And in context, the jury certainly was not going to believe, oh, that means that there was a lookout on this guy. Because all the agents that testified, we were working in a group. Some were in cars, some were walking. They all testified like Agent Acevedo said, I made a phone call. Agent Tabon said, I got started in this case, so I got a phone call from Acevedo. Agent Gomez said, I heard a radio announcement. That's how I got involved. Agent Montel said, I heard it over the next tell. So by saying, by Cuponsato saying, you know, I got a call of alert, the jury's going to think, well, just like all the rest of the guys, they're talking on the radios, they're talking on the phones because some are in cars, some are on foot, and they're trying to surveil this guy. What about your opponent's argument that, hey, Sergio was the cherry on top of the sundae? Well, again, there was no objection to that. And to ascribe to the prosecutor some untoward intent I think is unfair. There was no objection. And the jury's not going to think, oh, well, they must have known this guy before. They'd heard it three days of jury trial. They knew the guy had been arrested. They knew the guy had been investigated. They would assume, if they'd even thought about it at all, well, they'd probably figure out his name while they're doing this, you know, hour or two, however long it was, half-hour surveillance. Because they had, you know, they had the. . . In short, first, the record is totally silent on how the officer might have known his name. Totally. And there was, again, no objection to any of that. Now, she made objections. Counsel made objections during trial on relevance, and I believe she made a couple of hearsay objections. But the only objection on the issues she's bringing to this court today in her brief was made when Abe and Tavon testified in the new trial motion, and in the new trial motion. As far as the rebuttal evidence, the government is always allowed to point out evidence that the defendant has taken the stand, taken a false exculpatory story. He took the stand and said, look, I took two cabs, one downtown, didn't pay for another cab to go to the border. Then I stood in line for an hour to cross the border. Then I walked a mile to two different stores to buy milk and Doritos. Certainly, putting on Agent Acevedo, not as an expert witness, just as a lifetime border person who shopped on both sides of the border, said, you know, the prices for Doritos are the same in Mexico and Tijuana. The price of groceries are basically the same, to show that this is a pretty ridiculous story he's telling. He's going to spend all this time and money to buy Doritos and milk to show he was actually lying when he testified to this jury. So that was clearly admissible. What about the intimidation of the officers during closing argument? The trial judge said, I'm going to make sure nothing, no staring down or intimidation is going to be taking place. And as we said in our brief, it's an open courtroom. The Supreme Court said there's no presumption, certainly, of any impropriety by having police officers in the courtroom watching the trial. In Holbrook, there were four armed deputies during the whole trial, sitting in the front row. There's no evidence in this record that anything untoward happened, and the trial court said she was going to make sure nothing like that did happen. Okay. Your Honor, based on the brief, I'd like to submit it on the papers.  Any further questions? Thank you very much. Thank you. Okay. One more shot at it. Thank you. One of the issues here, I think the major issue here, is whether the prosecutor's misconduct materially affected the fairness of the trial, and I think it did. I think it's important to review, at least briefly, some of the type of testimony that was brought out. This wasn't the testimony from the agents about the list that was compiled. This was not merely background. This was not merely what do you do on a day-to-day basis. It was questions like this. This is from the prosecutor to Agent Tobon. What do you do with the information that those aliens give you? And then Agent Tobon responds, we develop information to exactly find out who that particular individual was who was involved. They are looking for specific people. They are looking for preexisting alerts, like the preexisting alert on Mr. Teo Carrillo. That information was not admissible and should have been omitted from the trial. Again, it's the repeated questioning by the prosecutor. And with regard to Agent Acevedo and whether he shops, Agent Acevedo is not some lifetime shopper, someone who shops on both sides of the border. He, in fact, said he didn't even frequently go to Tijuana, hadn't done so since he was a teenager, and he, of course, didn't because, as he testified, he's now a Border Patrol agent, so going to and from Tijuana is not something he does. And he had last, in fact, been in Tijuana approximately 10 months before my client was arrested. So it simply was not helpful, shouldn't have been admitted, and was prejudicial to my client. Finally, with regard to the agents in the courtroom, Your Honor asked me about Holbrook. In Holbrook, the agents, officers who were in the courtroom were there for courtroom security. There was no reason for the agents in this case to be in the courtroom other than, in fact, to help confirm what they felt the conclusion to that trial should be. So, again, Mr. Teo's case should be remanded for a new trial. Thank you. Thank you, counsel. The case to this jury here will be submitted.
judges: Zouhary, Reinhardt, Murguia